**Della M. GRATTAN, Violet Grattan, Gloria Grattan and Irene Grattan, doing business as D. M. Grattan Co., Plaintiffs,**

v.

**SOCIETA PER AZZIONI COTONIFICIO CANTONI, Defendant.**

United States District Court
S. D. New York.

May 28, 1957.

---

Goldman & Drazen, New York City, for plaintiffs, Daniel M. Shientag, New York City, of counsel.

Fink, McNamee & Pavia, New York City, for defendant, Lloyd I. Isler, New York City, of counsel.

WEINFELD, District Judge.

The defendant Societa Per Azzioni Cotonificio Cantoni, hereafter called Cantoni, moves to dismiss the first cause of action on the ground of res judicata.

Judgment is sought thereunder on a quantum meruit basis for commissions allegedly earned by the plaintiff as "the defendant's agents and sales representatives" in securing orders, contracts and agreements for the sale of defendant's merchandise from August 7, 1953 to May 31, 1954. The complaint demands judgment for $125,000 representing 5% of alleged sales of $2,500,000.

The question at issue is whether the foregoing cause of action was determined in a prior litigation between the same parties in the Supreme Court of the State of New York wherein judgment was rendered upon the merits in favor of the defendant and against the plaintiff.

At the outset it is noted that the judgment entered in the State Court does not contain a specific provision dismissing a quantum meruit claim against the defendant. However the defendant contends that there was such a disposition by the Court.

Of necessity we turn to the record in that suit. Where there is doubt as to the scope of a judgment the Court has the power to search the record to determine whether an issue was in fact litigated and disposed of upon the merits in the action which gave rise to the judgment.[1]

The facts with respect to the prior action are as follows: The defendant is

---

1. See, e. g., Clark v. Scovill, 193 N.Y. 279, 283, 91 N.E. 800; Bell v. Merrifield, 109 N.Y. 202, 211, 16 N.E. 55; People v. Reinforced Paper Bottle Corp., 176 Misc. 464, 26 N.Y.S.2d 251, 258; People v. Shoemaker, 228 App.Div. 314, 239 N.Y.S. 71, 73; Steinmetz Const. Co. v. Pothemont, 164 N.Y.S. 184, 185; McDonald v. Hygienic Ice & Refrigerating Co., 148 App.Div. 539, 132 N.Y. Supp. 857, 857.

an Italian corporation which, starting about 1950, sold one of its products to Amity Silk Corporation, hereinafter called Amity, a domestic corporation. In October, 1953 plaintiff commenced an action in the Supreme Court of the State of New York against Amity for commissions in connection with Amity's purchases from Cantoni for the period up to August 7, 1953.

In July, 1954 plaintiff started a second action in the Supreme Court of the State of New York against Cantoni.[2] In essence the second suit picked up where the first one against Amity left off. Recovery was sought of commissions on goods sold by Cantoni to Amity for the period commencing August 7, 1953, and referred to as the 1954 season. The complaint alleged that in and about 1950, Cantoni had engaged the plaintiff as its agent to market its products in the United States and agreed to pay it a 5% commission on all sales; that in consideration of Cantoni's downward adjustment of the sales prices on goods sold to Amity, the latter agreed to pay plaintiff its commissions.

The complaint then alleges that on or about August 7, 1953 Amity severed its relations with the plaintiff; that Cantoni, upon being advised of the severance of such relations agreed to pay the 5% commissions upon all textiles ordered by Amity from Cantoni for the 1954 season; that the orders so placed totalled more than $1,500,000 and commissions of 5% thereof, or $75,000, were demanded.

The foregoing actions by plaintiff against Amity and Cantoni were consolidated for the purpose of trial and were tried before Acting Justice Geller of the Supreme Court of the State of New York, without a jury.

The Court in its opinion[3] and decision[4] referred to the claim for commissions on purchases of goods made by Amity up to August 7, 1953 as the "Amity commission claim" and to the claim for commissions on sales made for the 1954 season by Cantoni to Amity as the "Cantoni commission claim". The Court found that the plaintiff had failed to sustain the claims against Amity and Cantoni based upon an express contract to pay commissions for the respective periods up to August 7, 1953 and thereafter for the 1954 season; specifically that the plaintiff "has failed to establish * * * that * * * a year to year contract existed or was made with either or both of the defendants".[5] Accordingly it concluded "that the causes of action * * * described as the Amity commission claim and the Cantoni commission claim, as amended by Grattan on the trial, must be and they are dismissed."[6]

However the dismissal upon the merits of their claims did not conclude the matter. The Court manifested deep concern that litigation amongst the parties might be resumed anew, since under New York law where a party alleges and fails to sustain a claim upon an express contract, the judgment of dismissal may not bar a new and subsequent action on a quantum meruit basis to recover for the services rendered.[7]

Mindful of the possibility of a resumption of litigation, Justice Geller's opinion indicates that he was determined, so far as legally possible, to dispose of any potential claims based upon the same operative facts which had been presented to him during the course of the trial.[8] Thus he specifically stated:

"Since parties and their counsel have the right, with which courts do not

---

2. The action named Cantoni and Amity as defendants. While three separate causes of action were alleged, we are concerned on this motion with the first, which was pleaded only as against Cantoni.

3 Grattan Co. v. Societa Per Azzioni Cotonificio Cantoni, Sup., 151 N.Y.S.2d 875, 879.

4. The opinion constituted the Court's decision. N.Y.Civil Practice Act, § 440.

5. 151 N.Y.S.2d at page 881.

6. Ibid.

7. See, Smith v. Kirkpatrick, 305 N.Y. 66, 111 N.E.2d 209.

8. His purpose to end the controversy

usually interfere, to make and present the issues in their own way, the court would not normally be concerned with the repercussions of its finding that Grattan has failed to establish the contract ultimately relied upon by it as the foundation for its Amity and Cantoni commission claims. Grattan has not, in its briefs or otherwise, requested (in the event its alleged contract with Cantoni and Amity be not established) that the court pass upon its right to any recovery in this action in quantum meruit so far as the *Amity* and *Cantoni* commission claims are concerned. And, of course, no such request has been made by either of the defendants. *However, because of the full record and unusual situation here presented, the court has felt obliged to consider these matters.*

"At the time of the termination of Grattan's services in August, 1953, unpaid commissions, at the rate of 5% on orders placed by Amity with Cantoni and filled, amounted to $19,883.07. There is no doubt about the fact that Cantoni's prices to Amity were fixed so that they would be net to Cantoni and that the prices so fixed contemplated Amity's payment of a 5% commission to Grattan. Similarly, in August, 1953, at the time of the termination by Amity of Grattan's services, orders theretofore placed by Amity with Cantoni were outstanding (with little or nothing of consequence further to be done by Grattan thereon), which were subsequently filled, at prices which contemplated Amity's payment to Grattan of a 5% commission amounting to $17,197.79. The dismissal, therefore, of the Amity and Cantoni commission claims, as pleaded and tried, would result in a windfall to Amity, which would, at first glance, appear to be redressable, if at all, only in a subsequent action.

"Perhaps this court's dismissal on the merits of the Amity and Cantoni commission claims because of Grattan's failure to establish the contracts relied on by it would not be res judicata in any subsequent action which may be brought by Grattan against Amity to recover in quantum meruit, see: Smith v. Kirkpatrick, 305 N.Y. 66, 111 N.E.2d 209; Walar v. Rechnitz, 126 App.Div. 424, 110 N.Y.S. 777, and the judgment herein could provide that such dismissal be without prejudice to such a subsequent action. However, after careful deliberation, I have come to the conclusion that the rights of the parties can and should, in the interests of justice, be determined in this litigation." [9] (Emphasis Supplied.)

The foregoing makes it clear that the Court found Amity and not Cantoni was liable on a quantum meruit basis because Amity had been benefited by the price reduction which Cantoni had granted. While the Court did not in haec verba specify that Cantoni was not liable to plaintiff on a quantum meruit basis, implicit in its holding Amity liable, is a rejection of such a claim as against Cantoni, which the Court had specifically stated it also took under consideration.

That the matter was passed upon and disposed of is underscored by a concluding statement—indeed a conclusion of law in the Court's decision. "The evidence establishes that Grattan rendered services to Amity and Cantoni at their special instance and request, under circumstances which imply an agreement by Amity to pay therefor, and is entitled to be compensated therefor by Amity on a quantum meruit basis (inasmuch as Cantoni's reduction in prices to Amity contemplated that Amity would pay for such services), and that the reasonable measure of such compensation, fixed by the parties themselves by their course of conduct, is 5% of the orders placed by Amity with Cantoni prior to August 7, 1953, even though some of such orders were filled subsequently." [10]

among the parties was born of the fact that the first trial, which lasted three weeks, had proved abortive when a mistrial was declared due to the illness of a juror; and the second trial consumed five weeks and at one point was also threatened with miscarriage.

9. 151 N.Y.S.2d at pages 881–882.

10. Id. 151 N.Y.S. at page 884.

In the light of this clear finding and expression of the Court's determination to end all litigation amongst the parties, to now suggest that the Court did not determine any potential claim in favor of the plaintiff against Cantoni on a quantum meruit basis, including that arising out of the sales made subsequent to August 7, 1953, when evidence had been presented covering sales for the 1954 season, is to disregard plain language and definitive holdings.

A fair reading of Justice Geller's decision compels the conclusion that all claims against both Amity and Cantoni based upon quantum meruit were fully considered and adjudicated, and the defense of res judicata must be upheld.

That there was such a disposition is underscored by a motion made by the plaintiff for a new trial on the ground that the Court's failure to award judgment on a quantum meruit basis against Cantoni for deliveries made for the 1954 season was contradictory in view of the award against Amity for the period prior thereto. The Court denied the motion and no appeal was taken by the plaintiff.

To permit the maintenance of the present action would do violence to the wholesome principle of res judicata and its purpose to terminate litigation where parties have had a full opportunity to be heard on the merits of their respective claims.

Settle order on notice.